UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
| Title | Jane Doe v. Jonathan Barnett et al. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                    Not Present

**Proceedings:**   (IN CHAMBERS) - DEFENDANTS CREATIVE ARTISTS AGENCY, LLC, CAA HOLDINGS, LLC, CAA STELLAR SPORTS LIMITED, AND CAA STELLAR LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT (Dkt. 56, filed on October 22, 2025)

SPECIALLY APPEARING DEFENDANT JONATHAN BARNETT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2) (Dkt. 63, filed on November 17, 2025)

## I.    INTRODUCTION

On February 19, 2025, plaintiff Jane Doe ("Doe" or "Plaintiff") filed this action against defendants Jonathan Barnett ("Barnett"), an individual; Creative Artists Agency, LLC ("CAA"), a Delaware limited liability company; CAA Holdings, LLC ("CAA Holdings"), a Delaware limited liability company; CAA Stellar Sports Limited f/k/a ICM Stellar Sports Limited and f/k/a The Stellar Group Limited ("CAA Stellar"), a United Kingdom limited company; CAA Stellar Football Limited f/k/a Stellar Football Limited ("Stellar Limited"), a United Kingdom limited company; and Does 1 through 10, inclusive.[1]  Plaintiff's complaint asserts twelve claims for relief: (1) forced labor and sex

---

[1] CAA and CAA Holdings are referred to, collectively, as the "CAA Entities."  CAA Stellar and Stellar Limited are referred to, collectively, as the "Stellar Entities."  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

trafficking in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589(a), 1591(a)(1), 1595, against Barnett; (2) participating in a venture in violation of the TVRPA, 18 U.S.C. §§ 1589(b), 1591(a)(2), 1595, against CAA Stellar and Stellar Limited; (3) benefitting from violations of the TVPRA, 18 U.S.C. § 1595, against CAA Stellar and Stellar Limited; (4) benefitting from violations of the TVPRA § 1591, against CAA and CAA Holdings; (5) conspiracy to violate the TVPRA, 18 U.S.C. §§ 1594(b), 1595, against CAA Stellar and Stellar Limited; (6) damages for sexual assault under California Code of Civil Procedure ("CCP") § 340.16 and civil conspiracy, against all defendants; (7) negligent supervision and retention, against CAA Stellar; and (8) negligent hiring, retention, and supervision, against CAA Holdings; (9) negligent hiring, retention, and supervision, against CAA and CAA Holdings; (10) intentional infliction of emotional distress, against Barnett; (11) common law negligence, against CAA Stellar, CAA, and CAA Holdings; and (12) negligence per se, against CAA Stellar, CAA, and CAA Holdings. Dkt 1 ("Compl.").

On November 10, 2025, plaintiff filed a motion to proceed anonymously and for entry of a protective order. Dkt. 57. On December 15, 2025, the Court granted plaintiff's motion to proceed anonymously and issued a protective order. Dkt. 73.

On October 22, 2025, the corporate defendants filed the instant motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and *forum non conveniens*. Dkt. 56 ("Mot.").[2] On January 9, 2026, plaintiff filed an opposition. Dkt. 76 ("Opp.").[3] On February 23, 2026, the corporate defendants filed a reply. Dkt. 98 ("Reply").[4]

___

CAA Entities and the Stellar Entities are referred to, collectively, as the "corporate defendants."

[2] The corporate defendants concurrently filed the Declarations of David Manasseh ("Manasseh Decl."), Catherine Gibaud ("Gibaud Decl."), and Scott Wilson ("Wilson Decl."). Dkts. 56-1 to 3.

[3] Plaintiff concurrently filed the Declarations of Eric Schmitt ("Schmitt Decl."), Parosha Chandran ("Chandran Decl."), and Jane Doe ("Doe Decl."). Dkts. 76-1, 76-12, 76-13.

[4] The corporate defendants concurrently filed Declarations of Scott R. Wilson ("Wilson Decl.") and Catherine Gibaud ("Gibaud Reply Decl."). Dkts. 100, 101.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

On November 17, 2025, defendant Barnett filed the instant motion to dismiss plaintiff's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Dkt. 63. On January 23, 2026, plaintiff filed an opposition. Dkt. 85. On February 9, 2026, Barnett filed a reply. Dkt. 90.

On March 9, 2026, the Court held a hearing. Dkt. 105. The Court permitted the parties to file supplemental briefing on the English cases relied on by the defendants' experts and allowed the parties to file supplemental briefing on plaintiff's negligent hiring, retention, and supervision claims. Id.

On March 13, 2026, the corporate defendants filed a supplemental memorandum of points and authorities on the English caselaw relied upon by their expert. Dkt. 112. On March 13, 2026, Barnett filed a list of the English caselaw relied upon by his expert. Dkt. 113. On March 27, 2026, plaintiff filed a supplemental response to the English case law relied upon by the corporate defendants' expert. Dkt. 116. On April 10, 2026, the corporate defendants filed a supplemental reply to plaintiff's response. Dkt. 120.

On April 9, 2026, plaintiff filed a supplemental brief in support of her claims for negligent hiring, retention, and supervision. Dkt. 119. On April 30, 2026, the corporate defendants filed a supplemental opposition to plaintiff's supplemental brief. Dkt. 123. On April 30, 2026, the corporate defendants also submitted a list of evidentiary objections to plaintiff's supplemental brief. Dkt. 124.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff Jane Doe alleges that she is a citizen of Australia and currently residing in Australia. Compl. ¶ 12. Plaintiff alleges that between 2017 and 2023, Barnett, with the assistance of other defendants, trafficked, threatened, tortured, and held her in bondage at numerous places throughout the world, including Los Angeles, California. Id. ¶ 12.

Plaintiff alleges that defendant CAA Stellar employees, agents, and emissaries assisted Barnett in the sex trafficking and forced labor scheme, id. ¶ 173-181, and that CAA Stellar and Stellar Limited knowingly facilitated Barnett's unlawful conduct. Id. ¶ 182-184.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|----------|----------------------|------|--------------|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

Plaintiff alleges that her children, referred to as Child 1 and Child 2, were present during some of the alleged events herein. Id. ¶ 13. Plaintiff alleges that in July 2017, when Ms. Doe was trafficked to London from Australia, Child 1 was 14 years old, and Child 2 was 15 years old. Id.

Plaintiff alleges that defendant Jonathan Ian Barnett is a citizen and resident of the United Kingdom. Id. ¶ 14.

Plaintiff alleges that defendant CAA Stellar Sports Limited is a private limited company incorporated under the laws of the United Kingdom. Id. ¶ 15. Plaintiff alleges that CAA Stellar was co-founded by Barnett and David Manasseh ("Manasseh") in or around 1994. Id.

Plaintiff alleges that on or about May 31, 2016, CAA Stellar opened its first U.S. office in Atlanta, Georgia, and that then upon acquiring U.S. sports agency, Global Premier Management, in 2017, CAA Stellar opened offices in New York City, New York; Boston, Massachusetts; and Tampa, Florida. Id. ¶ 16.

Plaintiff alleges that on or about October 27, 2020, Los Angeles-talent agency International Creative Management Partners, LLC ("ICM" or "ICM Partners") purchased CAA Stellar, and renamed the agency "ICM Stellar Sports Limited." Id. ¶ 17. Plaintiff alleges that at or about the time ICM Partners acquired CAA Stellar, CAA Stellar opened offices in Washington, D.C., and Los Angeles, California, and that ICM Partners appointed some of its top Los Angeles-based executives to the new ICM Stellar Board of Directors, including Steven Stanford ("Stanford"), Jonathan Perelman ("Perelman"), Richard Levy ("Levy"), and Theodore Chervin ("Chervin"). Perelman was named President of ICM Stellar. Id.

Plaintiff alleges that from October 27, 2020, through June 2022, the controlling party of CAA Stellar was TLBFP II LLC, a California limited liability company, located in Los Angeles, California. Id. ¶ 18.

Plaintiff alleges that defendant Creative Artists Agency, LLC ("CAA"), is a Delaware limited liability company with its principal place of business in Los Angeles, California and has conducted business in Los Angeles, California. Id. ¶ 19. Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | | Date | May 15, 2026 |
|---|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | | |

alleges that CAA is a leading sports and entertainment talent agency, with offices worldwide, and represents many top athletes and entertainers.  Id.

Plaintiff alleges that defendant CAA Holdings, LLC ("CAA Holdings") is a Delaware limited liability company with its principal place of business in Los Angeles, California and has conducted business in Los Angeles, California.  Id. ¶ 20.

Plaintiff alleges that on or around June 2022, the CAA Entities acquired and merged with ICM pursuant to Delaware law (the "CAA-ICM merger").  Id. ¶ 22. Plaintiff alleges that as a result of the CAA-ICM merger, the CAA Entities assumed liability for all ICM's debts and liabilities.  Id.  Plaintiff alleges that after the CAA-ICM merger, there was a continuity of management, personnel, physical location, assets, and general business operations of ICM as a part of the CAA Entities.  Id.

Plaintiff alleges that Barnett threatened plaintiff's child in order to keep her silent during the CAA-ICM merger and that CAA Stellar facilitated Barnett's conduct.  See id. ¶ 227-28.

Plaintiff alleges that ICM Partners was Barnett's joint employer (Barnett was ICM's employee and agent) from in or around October 2020, when ICM acquired CAA Stellar, until the CAA-ICM merger in June 2022 when CAA merged with ICM and all of its affiliated entities, including CAA Stellar.  Id. ¶ 23.

Plaintiff alleges that after the ICM-CAA merger, Stanford, Perelman, and Chervin remained on the new CAA Stellar Board of Directors, and that CAA Holdings was the largest parent entity that controlled CAA Stellar from June 2022 through 2023.  Id. ¶ 24.

Plaintiff alleges that defendant CAA Stellar is a division of CAA that, along with its employees, has conducted business in California.  Id. ¶ 25.

Plaintiff alleges that defendant Stellar Football Limited, now doing business as CAA Stellar Football Limited ("Stellar Limited"), is a private company incorporated under the laws of the United Kingdom and is a wholly owned subsidiary of CAA Stellar. Id. ¶ 26.  Plaintiff alleges that CAA Stellar and Stellar Limited (collectively, the "Stellar Group") are alter egos of each other and operate as a single enterprise for purposes of personal jurisdiction and liability.  Id.  Plaintiff alleges that both companies shared all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|----------|------------------------|------|--------------|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

facets of control, including their board of directors and management, and that both defendants are treated as one company without regard to their respective corporate forms. Id.

Plaintiff alleges that CAA was Barnett's joint employer (and Barnett was CAA's employee and agent) from on or around June 2022, when CAA merged with ICM Partners, until early March 2024, when Barnett publicly "retired" and quietly resigned from the Stellar Group defendants' respective boards of directors and other positions of leadership within other Stellar Group and CAA Entities. Id. ¶ 28. Plaintiff alleges that the corporate entity then employing Barnett (i.e., the Stellar Group from 2017 to on or around October 2020, ICM from in or around October 2020 to in or around June 2022, and CAA from on or around June 2022 to March 2024) had the power to hire and fire Barnett, set his pay, and control his work conditions. Id.

## III.   LEGAL STANDARD

### A.     *Forum Non Conveniens*

Generally, "[i]n dismissing an action on *forum non conveniens* grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001). "The *forum non conveniens* determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Revno, 454 U.S. 235, 257 (1981). It is "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000)). "[T]he standard to be applied is whether ... defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent ...." Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir.1983). "Where the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof." Lueck, 236 F.3d at 1143. Ordinarily "[t]he plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." Id. at 1142–43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

### B.    Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant submits evidence controverting the allegations, however, the plaintiff may not rely on its pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir.1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154-55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).  The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence.  Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities.  Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993).  The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).  The plaintiff bears the burden of satisfying the first two prongs, and must do so to establish specific jurisdiction.  Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied.  Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477).  The third prong requires the Court to balance seven factors: (1) "the extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

forum state; (3) "the extent of conflict with the sovereignty of the defendant's state," (4) "the forum state's interest in adjudicating the dispute"; (5) "the most efficient judicial resolution of the controversy"; (6) "the importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) "the existence of an alternative forum." Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

### C.    Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

The corporate defendants move to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and *forum non conveniens*.

### A.    *Forum Non Conveniens*

The corporate defendants argue that plaintiff's complaint should be dismissed on *forum non conveniens* grounds because "[t]he Complaint's core allegations concern acts carried out in London, England, by a U.K. citizen resident in London, that resulted in injury to Plaintiff in London." Mot. at 7. The corporate defendants argue that the U.K. is an adequate forum for the instant dispute because "[a]ll Defendants are amenable to process in the U.K.: Barnett is a U.K. citizen and resident (Compl. ¶ 14); the Stellar Entities are London-based U.K. companies (id. ¶¶ 4, 15, 26; Manasseh Decl. ¶¶ 2–4); English courts can also exercise personal jurisdiction over the CAA Entities. See Declaration of Catherine Gibaud KC, dated October 17, 2025 ("Gibaud Decl."), ¶¶ 15–19, 35–36, 55–66." Id. at 8. Moreover, the corporate defendants argue that "English courts "permit litigation of the subject matter of [this] dispute" and provide remedies for Plaintiff's alleged harm. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

Next, the corporate defendants argue that the private interest factors strongly favor dismissal. They argue that the location and availability of the parties, witnesses, and evidence favor the U.K. forum: Defendant Barnett resides in the U.K. and defendant Stellar Entities are London-based U.K. companies, and "[t]he events giving rise to this dispute occurred exclusively in the U.K." Id. at 8-9. They argue that key witnesses and evidence are concentrated in the U.K., given that the relevant records and findings of the ongoing criminal investigation into Barnett by the London Metropolitan Police are in the U.K; that third-party witnesses and records in connection with plaintiff's medical examinations and diagnosis in the U.K.; that potential percipient witnesses to Barnett's alleged abuse of Plaintiff are presumably in the U.K.; and that evidence in the possession, custody, or control of the Stellar Entities is also located in the U.K. Id. at 9-10. The corporate defendants further argue that "the English court will have the authority to compel U.K.-based third party witnesses to testify" and "the authority to subpoena evidence from U.K. third parties, including records from the London Metropolitan Police." Id. at 10 (citing Gibaud Decl.). The corporate defendants also argue that the U.K. is a more practical forum because judgments from English courts are enforceable in California, and because English courts are can better coordinate this dispute with the potential criminal prosecution of Barnett. Id. at 10.

The corporate defendants further argue that the public interest factors strongly favor dismissal. They argue that the U.K. has a greater interest than the United States in adjudicating this dispute, given that the "key events giving rise to Plaintiff's Complaint (i.e., Barnett's alleged physical abuse of Plaintiff) exclusively occurred in the U.K." Id. at 11 (emphasis in original). They also argue that English courts are more familiar with English law, which is "likely [to] govern many of Plaintiff's claims." Id. at 12 (citing Dibdin v. S. Tyneside NHS Healthcare Tr., No. 12-CV-00206-DDP-PLAX, 2013 WL 327324, at *3 (C.D. Cal. Jan. 29, 2013). Finally, they argue that considerations of court congestion and costs favor the U.K. forum because this dispute is unrelated to California. Id. at 13.

In opposition, plaintiff argues that the corporate defendants have not established that the courts of England are an "available" forum because they "fail to show that the CAA [Entities], who are residents of California, are amenable to service in England." Opp. at 10. Plaintiff notes that although the corporate defendants' expert Catherine Gibaud declared that English courts "can exercise personal jurisdiction over the CAA Entities," Gibaud also states that England cannot exercise jurisdiction over the CAA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

defendants unless all three "limbs" of the "service-out" test are met. Opp. at 10 (citing Gibaud Decl. ¶¶ 64, 16, 39). Plaintiff argues that "Gibaud opines that Doe is 'likely' to meet the first and third "limbs" … [but] that she gives no opinion on the *second* [limb] …." Id. at 10-11 (emphasis in original). Plaintiff argues that "the second limb cannot be met, because the claims Gibaud endorses under English law are nonviable in practice." Id. at 11 (citing Chandran Decl. ¶ 180).

Moreover, plaintiff argues that English courts do not offer her an adequate remedy because English law "does not permit litigation of the subject matter of the dispute." Id. at 12. Plaintiff contends that "the heart of [her] case against the Defendants—its 'subject matter'—are her claims for participant and beneficiary liability under the TVPRA and her common law claims for negligent supervision"—claims that are not recognized under U.K. law. Id. at 12-13. Plaintiff argues that claims under U.K. law that the corporate defendants contend could cover this dispute—"trespass to person" (battery, assault, or false imprisonment), "intimidation," general "negligence," "unlawful means conspiracy," and statutory "harassment," Gibaud Decl. ¶¶ 20, 67-76, "are fundamentally different from, and incapable of addressing the subject matter of, trafficking and forced-labour liability." Id. at 13 (citing Chandran Decl. ¶ 200); id. at 14-16. Plaintiff further argues that these English tort claims "appear to be at least partly time-barred, as Doe alleges acts [by defendants] as early as 2017–18"; by contrast, plaintiff argues that her civil claims under the TVPRA are not time-barred. Id. at 17 (citing Chandran Decl. ¶¶ 166-72; 18 U.S.C. § 1595(c)(1); CCP § 340.16(a)(1)).

Plaintiff also argues that the private interest factors do not favor dismissal. Plaintiff argues that she now "resides primarily in the United States in the same State as one of her children, while the other lives in Canada." Id. at 18. She attests that she would not find litigation in England convenient and that she would find it "retraumatiz[ing]" were she required to attempt to convey her experiences to new counsel in England. Id. at 21 (citing Doe Decl. ¶7.). Plaintiff also argues that key witness from the Stellar Entities, including Stellar's President, Chairman, and a majority of its board members are based in Los Angeles. Id. at 19. Plaintiff also argues that the corporate defendants' claim that "Stellar's relevant financial records are in England is unsupported and, in fact, controverted by Doe's allegation that Stellar's primarily California-based board was responsible for 'keeping adequate financial records' during the relevant timeframe." Id. at 19 (citing compl. ¶ 197).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

As to the public interest factors, plaintiff argues that England has comparatively little "local interest" in plaintiff's claims given that she is not an English citizen and because of "the presence of [the corporate defendants] in California and [allegations of their] specific activity related to the trafficking [in California]." Id. at 21-22. Plaintiff also argues that this Court has greater familiarity with the governing law, including her TVPRA and California state law claims, than English courts. See id. at 23. Plaintiff argues that even if English law applied to some of her claims under California's choice of law rules, this Court may competently apply foreign law to properly brought claims. Id. (citing Aldini AG v. Silvaco, Inc., No. 21-CV-06423-JST, 2022 WL 20016826, at *9 (N.D. Cal. Aug. 3, 2022).

Plaintiff also argues that "the TVPRA itself is a mandate against application of *forum non conveniens*" because "[t]he TVPRA's venue provision—18 U.S.C. § 1595(a)—is not a 'general' venue statute; it is a Congressional mandate that district courts alone shall hear even an extraterritorial 'civil action' of a 'victim of a violation … in an appropriate district court.' 18 U.S.C. § 1595(a), 15[9]6(a) (extraterritorial jurisdiction)." Id. at 25. Plaintiff argues that, as is the case here, "[c]ourts in the Ninth Circuit have declined to apply *forum non conveniens* based on applications of U.S. law that mandate litigation in the United States." Id. at 25-26.

In reply, the corporate defendants state that "the CAA Entities are willing to submit to the jurisdiction of the English courts voluntarily, for the limited purpose of this dispute and subject to reserving all defenses to liability." Reply at 3 (citing Gibaud Reply Decl. ¶ 38). The corporate defendants further argue that England is an adequate alternative forum because English law permits litigation of the subject matter of the complaint and provides adequate remedies to plaintiff: "English courts have upheld civil claims brought by victims of human trafficking, modern slavery, and forced labor, awarding a broad range of damages, including aggravated and punitive damages." Id. at 4 (citing Gibaud Reply Decl. ¶¶ 11-16). They argue that even if English claims cannot "[s]ubstitute for TVPRA claims," as plaintiff's expert Parosha Chandran contends, "substitution is not the standard for determining adequacy of a foreign forum. All that is required is [the availability of] "some remedy." Id. at 4 (citing Lueck, 236 F.3d at 1143). The corporate defendants further argue that the fact that some of plaintiff's claims may be time-barred if brought as English tort claims does not render English courts inadequate. Id. at 5-6. The corporate defendants repeat that the private interest factors and public interest factors strongly favor dismissal. Id. at 6-8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

*Forum non conveniens* is "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002) (citation omitted). "A *forum non conveniens* determination is committed to the sound discretion of the district court." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001) (citations omitted).

On a motion to dismiss for *forum non conveniens*, "a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1224 (9th Cir. 2011) (citation omitted). An alternative forum is adequate if "(1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." Id. at 1225 (citations omitted). Private interest factors include "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." Boston Telecomms. Grp. v. Wood, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (citation omitted). Public interest factors include "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1181 (9th Cir. 2006) (citation omitted).

The Court finds that the corporate defendants have satisfied their burden of demonstrating that England is a more convenient forum for plaintiff's claims. First, the corporate defendants have established that English courts would provide an adequate alternative forum for plaintiff's claims. All defendants in this action are amenable to process in England: It is undisputed that Barnett is a U.K. citizen and resident, compl. ¶ 14, mot. at 8, and that the Stellar Entities are U.K.-incorporated companies, compl. ¶ 15, 26, mot. at 8. See Gibaud Decl. ¶ 15 ("The English court … has jurisdiction to entertain a claim against a defendant who is present in England and duly served there with process."). An English court may also exercise jurisdiction over the CAA Entities,[5] assuming that they consent to the English court's jurisdiction. Gibaud Reply Decl. ¶ 38

---

[5] The CAA Entities are Delaware limited liability companies with principal places of business in California. Compl. ¶¶ 9-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

("[I]f the CAA Entities submit to the jurisdiction [of the English court], this will mean that the jurisdiction of the English court is established."). Here, the corporate defendants state that "the CAA Entities are willing to submit to the jurisdiction of the English courts voluntarily, for the limited purpose of this dispute and subject to reserving all defenses to liability." Reply at 3.[6] Thus, because the CAA Entities have "agreed to waive any challenge to personal jurisdiction in the English courts," the Court finds that all defendants are amenable to process there. See Huthart v. News Corp., No. CV-1304-253-MWF-AJWX, 2014 WL 12577175, at **4–5 (C.D. Cal. May 21, 2014).

In addition, the Court finds that English courts provide a satisfactory remedy for plaintiff's claims. The corporate defendants' expert Catherine Gibaud contends that "[t]here are various types of claims which exist under English law which … could cover the subject matter of this dispute, namely claims in tort for trespass to the person (which includes assault and false imprisonment), intimidation, negligence, unlawful means conspiracy and/or under the UK Protection from Harassment Act 1997." Gibaud Decl. ¶ 20. By contrast, plaintiff's expert Parosha Chandran contends that "none of these torts [identified by Gibaud]—individually or collectively—address the TVPRA claims asserted against the Corporate Defendants or provide a meaningful or sufficient remedy." Chandran Decl. ¶ 37. Both experts agree that civil claims for trafficking and forced labor such as those available under the TVPRA are not available under the Modern Slavery Act 2015 of England and Wales. Gibaud Decl. ¶ 73; Chandran Decl. ¶¶ 19. While the Court acknowledges the apparent lack of civil causes of action for trafficking and forced labor under English law, plaintiff has not demonstrated that she would be precluded from obtaining "some remedy" in England under English law.[7] See Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001) ("The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be

---

[6] It is unclear whether Barnett has agreed to waive any challenge to jurisdiction in the U.K. forum.

[7] Gibaud brings to the Court's attention "cases in which the English courts have entertained (and indeed upheld) civil claims brought by victims of human trafficking, modern slavery and forced labour, using other available causes of action." Gibaud Reply Decl. ¶¶ 11-12. Gibaud argues that some of these cases "demonstrate the different ways in which victims of [trafficking or forced labor] can seek compensation from the English courts, including against corporate entities … through the many kinds of claims available under English civil law." Id. ¶ 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

adequate. … However, it is only in 'rare circumstances … where the remedy provided by the alternative forum … is so clearly inadequate or unsatisfactory, that it is no remedy at all,' that this requirement is not met.") (citations omitted); Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 701–02 (9th Cir. 1995) ("A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress.") (citation omitted); Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768-69 (9th Cir. 1991) (Japan adequate forum despite unavailability of RICO and Lanham Act claims, where plaintiff could seek to recover via tort and contract claims); STM Grp., Inc. v. Gilat Satellite Networks Ltd., No. SACV 11-0093 DOC (RZx), 2011 WL 2940992, at *3 (C.D. Cal. July 18, 2011) (alternative forum not required to "afford [] the same causes of action or remedies").

At the hearing, plaintiff's counsel argued that Ms. Gibaud's Reply Declaration, dkt. 101, did not identify any cases adjudicated on the merits under English law in which "an English court applie[d] fines [against a corporate defendant] for a trafficking plaintiff absent direct employment, contract, or direct commission of the tort [by the corporate defendant]," a theory which plaintiff pursues in her instant action. See dkt. 107, Hr'g Tr. at 16:9-12. Based on the English caselaw cited by Ms. Gibaud and submitted by the corporate defendants, see dkts. 112-3 to 10, plaintiff may be correct; however, as corporate defendants point out, "such [a case has been] entertained by the English courts in … Limbu v Dyson Technology Ltd. [2026] EWHC 38 (KB) …, discussed in Ms. Gibaud's Reply Declaration. See Gibaud Reply Decl. ¶ 15." Dkt. 112 at 4. The plaintiffs in Dyson were twenty-four migrant workers who alleged that they were trafficked to work in two Malaysian factories manufacturing components for corporate defendant Dyson's supply chain. Dkt. 112-5, Limbu v Dyson Technology Ltd. [2026] EWHC 38 (KB), at 2. The Dyson plaintiffs alleged no employment or direct contractual relationship with the Dyson corporate defendants, nor direct commission of torts by those defendants. See id. At the hearing and in their supplemental briefing, plaintiff's counsel objected to the relevance of Dyson on the basis that the case involved the application of Malaysian law. Hr'g Tr. at 16:19-17:19; dkt. 116 at 4. Although it appears undisputed that Malaysian law governed all of plaintiffs' claims in Dyson, on the question of whether the Dyson corporate defendants owed the plaintiffs a duty of care (in the context of the plaintiffs' negligence claims), the English Court of Appeal considered this question to be "a novel issue in English law," noting that "it is a matter of debate as to whether there is any relevant difference [between English and Malaysian law] in relation to the duty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | | Date | May 15, 2026 |
|---|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | | |

question in the case." Dkt. 112-6, Limbu v Dyson Technology Ltd. [2024] EWHC Civ. 1564, at ¶¶ 71-72. Although it appears that the Dyson case has since settled, dkt. 116 at 4, the English Court of Appeal ruling in Dyson indicates that English law could potentially provide plaintiff Doe in this case with "some potential avenue for redress" for her negligent hiring, retention, and supervision claims against the corporate defendants. See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 701-02 (9th Cir. 1995). Moreover, regardless of whether plaintiff has a viable negligence claim or negligent hiring, retention, and supervision claims against the corporate defendants under English law, English law would likely provide plaintiff with remedies against Barnett for her injuries arising from Barnett's alleged conduct. See Gibaud Decl. ¶ 20; see Chandran Decl. ¶ 158 (plaintiff's own expert opining that "traditional English torts—such as assault, false imprisonment, negligence, or harassment—are [not] an adequate substitute for the TVPRA," but not disputing that such English tort remedies would nonetheless be available to plaintiff if she asserted such torts against Barnett). To succeed on their *forum non conveniens* motion, the corporate defendants need not establish that they are in fact liable on any of plaintiff's claims under English law; they need only demonstrate that "[t]he foreign forum … provide[s] the plaintiff with some remedy for [her] wrong." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001). The corporate defendants have made this showing.[8]

As to the parties' dispute over whether some of plaintiff's claims would be barred by statute of limitations under English law,[9] the Court finds it appropriate to resolve this issue by requiring defendants to waive certain statute of limitations defenses in the

---

[8] In her supplemental brief regarding her negligent hiring, retention, and supervision claims against the corporate defendants, plaintiff articulates the legal theories and anticipated evidence in support of such claims under California law. Dkt. 119 at 6-10. In response, the corporate defendants argue that such claims fail as a matter of law. Dkt. 123 at 2-9. Because the corporate defendants have demonstrated that the English courts would provide plaintiff with some remedy for her alleged wrongs, the Court finds that dismissing plaintiff's action on *forum non conveniens* grounds is appropriate, even assuming *arguendo* that plaintiff's claims in this forum (i.e., under California and federal laws) have merit and are supported by evidence.

[9] Compare opp. at 17, with reply at 5-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                          'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

English forum as a condition of granting their motion to dismiss.[10]  See Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1235 (9th Cir. 2011) ("We have affirmed forum non conveniens dismissals that addressed statute of limitations concerns by requiring waiver in the foreign forum.") (citing cases).

Because the corporate defendants have established that English tort law could provide plaintiff with "some potential avenue for redress," the Court concludes that English courts provide an adequate alternative forum for plaintiff's claims.  See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 702 (9th Cir. 1995).

The balance of private and public interest factors strongly favors resolution of this dispute in England.  The residences of the parties and the witnesses favor resolution of the dispute in England.  Although plaintiff and one of her children resides in the United States,[11] Doe Decl. ¶¶ 3-4, and the CAA Entities have their principal places of business in California, compl. ¶¶ 19-20, Barnett is a U.K. citizen and resident, and the Stellar Entities are incorporated in the U.K.[12]  Importantly, because plaintiff alleges that a significant

---

[10] The corporate defendants state: "To the extent the Court has concerns regarding limitations periods, the Corporate Defendants are willing to waive in the English courts any statute of limitations defense that matured after the filing of this action on July 2, 2025, as if Plaintiff had initiated proceedings in the proper [English] forum on that date."  Reply at 6 n.2.  See also dkt. 107, Hr'g Tr. at 5 (Corporate Defendants' counsel stating at the hearing, "[w]ith respect to the statute of limitations, the corporate defendants have offered to waive any defenses that would have arisen after the plaintiff -- after the date the plaintiff filed in the California court.").  Barnett "states affirmatively that he agrees to waive the defense of limitations under the laws of England should Plaintiff's claims be dismissed in this action and refiled by Plaintiff, in whole or in part, in the courts of England."  Dkt. 90 at 20.  See also dkt. 107, Hr'g Tr. at 38 (Barnett's counsel stating at the hearing, "with respect to Mr. Barnett, he agrees to waive statute of limitations as to Plaintiff's claims.").

[11] The Court is informed of the state in which plaintiff and her child reside but does not include this information here because it was filed under seal.  See Doe Decl. ¶ 3.

[12] The parties dispute whether either of the Stellar Entities ever had a single office in California during the relevant period.  Compare Manasseh Decl. ¶¶ 5-6, with opp. at 7 (citing Schmitt Decl.).  The Court need not resolve this dispute because even if the Stellar Entities had or still has some offices in Los Angeles, this would not change the Court's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

majority of the abuse and sexual and physical assault by Barnett against her occurred in London, it is likely that a majority of material witnesses in this dispute are located in London.  See compl. ¶¶ 63-172.  For example, potential percipient witnesses to Barnett's alleged repeated physical abuse of plaintiff, including alleged sex workers and other individuals that plaintiff sought out as part of Barnett's "slave hunting" demands, are also presumably in the U.K.  See compl. ¶¶ 139-152 (alleging that plaintiff was forced to "secur[e] … rooms at luxury hotels like the Churchill and the Millenium Hotel Mayfair, as well as booking Airbnb apartments" for "slave hunting").  Likewise, third-party witnesses in connection with plaintiff's medical examinations and diagnosis are likely in the U.K., "where she told doctors she was violently abused for years."  Compl. ¶¶ 249-251.  Other potential witnesses to plaintiff's and Barnett's relationship are also likely in the U.K., given that the complaint alleges Barnett lived and worked in London as an

conclusion that an overwhelming share of material evidence is likely located in the U.K.  Plaintiff argues that: "[CAA] Stellar's President, Chairman, and a majority of its board members during the relevant period are based in Los Angeles. (Compl., ¶¶194–97, 259–61.). These individuals were involved in supervising Barnett and Stellar's accounting records, and their actions are, thus, central to Doe's claims against the Corporate Defendants. (Compl., ¶197.)."  Opp. at 19.  Reviewing the complaint, the Court notes that plaintiff does not allege that any of the California-based former directors of CAA Stellar (nor any officer of the CAA Entities) are individually alleged to have relevant knowledge of Barnett's alleged abuse of plaintiff; rather, the complaint merely alleges that the CAA Stellar board of directors was responsible for "keeping adequate accounting records, and taking reasonable steps for the prevention and detection of fraud and other irregularities," compl. ¶197, and that "Barnett brings such a high value to [the] Stellar [Entities'] business and brand that the Stellar [Entities] knowingly facilitated Barnett's depraved actions."  Compl. ¶ 181.  Thus, while some evidence relevant to this dispute may be located in California, the Court finds that such evidence would be minimal compared to the important material evidence likely located in the U.K.  See Lueck v. Sundstrand Corp., 236 F.3d 1137, 1146 (9th Cir. 2001) ("[A] court's focus should not rest on the number of witnesses or quantity of evidence in each locale. Rather, a court should evaluate 'the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum.'") (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|----------|----------------------|------|--------------|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

executive of Stellar Sports during much of the relevant period, see compl. ¶¶ 87, 107, 210, 259, and has physically encountered plaintiff only in the U.K.  See generally compl.

Similarly, most of the material evidence to this dispute is likely located in the U.K., including the records and findings of the ongoing criminal investigation by the London Metropolitan Police into Barnett.  See Huthart v. News Corp., No. CV-1304-253-MWF-AJWX, 2014 WL 12577175, at *9 (C.D. Cal. May 21, 2014) (granting dismissal in part because evidence collected by London Metropolitan Police was located in England).  Obtaining this likely critical evidence in this Court could be protracted and burdensome because it would require the parties to comply with the procedures set forth in the Hague Evidence Convention.  Gibaud Decl. ¶¶ 23, 80-82.  Plaintiff does allege that Barnett remotely abused her via electronic communications when she was located in California and forced her to engage in "slave hunting" while she was in Los Angeles in September 2018.  Compl. ¶¶ 12, 14, 88, 149.  However, the witnesses and evidence for this alleged remote conduct may not be located in California, in part because plaintiff alleges that she did "not find[] Barnett a 'new slave' while she was in California."  Compl. ¶ 150.

"[W]ith regard to the ability to compel unwilling witnesses [who may be U.K. citizens], this factor [also] weighs in favor of England."  Huthart, 2014 WL 12577175, at *10.  In addition, plaintiff has not sufficiently demonstrated why an English court's judgment could not be enforced in California.  Soc'y of Lloyds v. Blackwell, 127 F. App'x 961, 962 (9th Cir. 2005) (holding that English judgments are properly enforceable under California law).  Finally, given the ongoing criminal investigation into Barnett by the London Metropolitan Police that may result in a prosecution, English civil courts are likely better able to coordinate potential criminal and civil proceedings than this Court.  See mot. at 10-11.  Overall, because the key witnesses and evidence material to this dispute are likely concentrated in the U.K., the balance of the private interest factors strongly favors resolution of this dispute in an English court.

The public interest factors also strongly favor resolution of the dispute in England.  As to the first public interest factor, "we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest."  Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1182 (9th Cir. 2006); but see Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1232 (9th Cir. 2011) ("The local interest factor has the … aim of determining if the forum in which the lawsuit was filed has its own identifiable interest in the litigation *which can justify proceeding in spite of* …

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|----------|----------------------|------|--------------|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

*burdens [on local courts and juries]*.") (emphases added). This factor favors the U.K. forum. On the one hand, California has an interest in protecting persons against harms resulting from sex trafficking within its borders. See United States v. Jacquay Quinn Ford, No. CR 05-627 ER, 2006 WL 8426827, at *2 (C.D. Cal. Apr. 5, 2006) ("In enacting the Trafficking Victims Protection Act of 2000 [the predecessor the TVPRA] … Congress expressed its concern with the sex trade and trafficking of persons within the borders of the United States and into the United States from foreign countries."). Given plaintiff's allegations that Barnett committed violations of the TVPRA within California's borders and also caused plaintiff harm in California through alleged remote abuse, California has an interest in adjudicating plaintiff's claims. See Keeton v. Hustler Mag., Inc., 465 U.S. 770, 776 (1984) ("[A] state has "an especial interest in exercising judicial jurisdiction over those who commit torts within its territory."); Doe (S.M.A.) v. Salesforce, Inc., No. 3:23-CV-0915-B, 2024 WL 1337370, at *6 (N.D. Tex. Mar. 28, 2024) ("[a state] has an interest in prohibiting the formation and operation of sex trafficking ventures within its borders" and in adjudicating related TVPRA claims).

On the other hand, plaintiff's claims of Barnett's remote abuse of plaintiff when she was in California and when he was in California (but never when they were both in California) are only tangentially connected to California.[13] In other words, the alleged remote abuse tied to California is only marginally connected to plaintiff's core claims of slavery, trafficking, physical and sexual assault that occurred predominantly in London. Moreover, given that neither plaintiff nor Barnett is a California citizen, California's "interest is slight compared to the time and resources [this Court] would expend if it were to retain jurisdiction over this dispute." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1147 (9th Cir. 2001). By contrast, the United Kingdom's interest in this dispute is exceedingly strong because plaintiff alleges that a significant majority of the abuse and sexual and physical assault by Barnett against her occurred in London. See Dibdin v. S. Tyneside NHS Healthcare Tr., No. 12-CV-00206-DDP-PLAX, 2013 WL 327324, at *6 (C.D. Cal. Jan. 29, 2013) ("There is a local interest in having localized controversies decided at home.") (citation omitted).

---

[13] At the hearing, plaintiff's counsel stated that the total time that plaintiff has spent in California during the relevant period "adds to about a total of a week." Dkt. 107, Hr'g Tr. at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|----------|----------------------|------|--------------|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

Furthermore, it is also likely that substantial share of affirmative acts or omissions by the corporate defendants that allegedly give rise to plaintiff's TVPRA and common law claims likewise occurred in the U.K. instead of in California. For example, plaintiff's allegation that a male driver employed by CAA Stellar failed to take action after she told him that "[Barnett] has me trapped as a slave" outside Barnett's U.K. home, see compl. ¶ 210, constitutes an omission by the driver that occurred in the U.K. Although plaintiff's claims against some corporate defendants are "connected with the United States and California, based on [their] presence there," opp. at 21, the U.K.'s interest in adjudicating civil claims arising from the alleged repeated physical and sexual assault within the U.K. by Barnett, a U.K. citizen, far outweighs California's local interest in this dispute. Moreover, two of the corporate defendants—the Stellar Entities—are U.K. incorporated companies that allegedly facilitated Barnett's abuse of plaintiff. Therefore, the first public interest factor favors the U.K. forum or is at most neutral: Although California has "an identifiable local interest in the controversy," Tuazon, 433 F.3d at 1182, it is exceedingly weak; "the interest in [the U.K.] regarding this suit is extremely high." Lueck, 236 F.3d at 1147.

"The second public interest factor concerns the choice of law that will govern [plaintiff's] substantive claims." Tuazon, 433 F.3d at 1182. The Court need only undertake the choice of law analysis with respect to plaintiff's claims brought under the TVPRA because plaintiff argues that the TVPRA mandates litigation in a United States forum. Opp. at 25; see Lueck v. Sundstrand Corp., 236 F.3d 1137, 1148 (9th Cir. 2001) ("[T]he choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States"; "The purpose of a choice of law inquiry in a forum non conveniens analysis is to determine if one of these statutes [mandating venue in the United States district courts] would apply.").

This Court applies California's choice of law rules. See Barclays Disc. Bank Ltd. v. Levy, 743 F.2d 722, 725 (9th Cir. 1984). "California applies a three-part test to determine choice of law in the absence of an effective choice-of-law agreement." Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1233 (9th Cir. 2011). "This 'governmental interest approach' involves: (1) determining if the foreign law 'materially differs' from California law; (2) and if so, next determining each respective state's interest in application of its law; (3) and finally, if the laws materially differ and both states have an interest in the litigation, selecting the law of the state whose interest would be 'more impaired' if its law were not applied." Id. (citing cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
| Title | Jane Doe v. Jonathan Barnett et al. | | |

Applying the governmental interest approach here, although the Court has concluded that English law would provide plaintiff with satisfactory relief for her claims, the Court also concludes that English tort law "materially differs" from plaintiff's TVPRA claims. As plaintiff's expert Parosha Chandran points out, the TVPRA better addresses "trafficking and forced labour as composite, enterprise-based, and exploitative wrongs, including allegations of knowing benefit, facilitation, omission, and conspiracy by corporate actors"; by contrast, English tort law "address discrete acts rather than systemic or enterprise-level exploitation," "cannot capture commercial benefitting from exploitation," and "do[es] not permit recovery of trafficking-specific harms." See Chandran Decl. ¶ 213, 200. Next, as discussed, the Court finds that although California has an identifiable interest in this dispute, the U.K. has a far greater interest in resolving this dispute. Finally, based on the information available to the Court, the Court finds that the U.K.'s interests in applying its laws to this dispute would likely be more impaired than California's interests would be if U.K. law were not applied. Unlike Congress in the TVPRA, the U.K. Parliament decided against creating a specific civil cause of action for human trafficking, modern slavery, or forced labor in the Modern Slavery Act of 2015. See Gibaud Reply Decl. ¶ 9. One member of the House of Lords commented "that existing [English] law provides sufficient access to civil remedies for victims of slavery and trafficking."[14] Given California's minor interest in this dispute, imposing the TVPRA—a United States policy—to this case would impair the U.K. government's policy decision to limit civil remedies for victims of slavery and trafficking more so than imposing English tort law would impair California's policies of providing such relief to victims through the TVPRA, a United States rather than California-specific policy. Thus, U.K. law governs this dispute under California's choice of law rules. Because English courts are more familiar with the governing law of this dispute—English tort law—this factor favors the U.K. forum. See Piper Aircraft Co. v. Reyno, 454 U.S. 235 at 260 n.29 (1981) ("Many *forum non conveniens* decisions have held that the need to apply foreign law favors dismissal," though "this factor alone is not sufficient to warrant dismissal.").

As to the remaining public interest factors, defendants have provided compelling evidence that this Court is less "well-equipped" to handle this action compared to an English court. See Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1232 (9th Cir. 2011) ("The factors regarding familiarity with the applicable law, docket congestion,

[14] Gibaud Reply Decl. ¶ 10 (quoting https://hansard.parliament.uk/Lords/2014-12-03/debates/14120356000509/ModernSlaveryBill).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

and costs and other burdens on local courts and juries are all concerned with how well-equipped a jurisdiction is to handle a case."). This is primarily because California has comparatively little interest in this dispute compared to the U.K. Lueck v. Sundstrand Corp., 236 F.3d 1137, 1147 (9th Cir. 2001) ("Because the local interest in this lawsuit is comparatively low, the citizens of [California] should not be forced to bear the burden of this dispute."). Moreover, though the Court does not weigh this factor heavily, the corporate defendants have provided evidence that the average time for a case to reach trial is shorter in English courts than in this District. Gibaud Decl. ¶¶ 88-90.[15] See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").

In short, provided that all defendants agree to waive any challenge to personal jurisdiction and waive any statute of limitations defense in the U.K. forum, the corporate defendants have met their burden of demonstrating that English courts provide an adequate alternative forum for the instant dispute and that the balance of private and public interest factors strongly favor trial in the U.K. Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1224 (9th Cir. 2011) (citation omitted). Accordingly, the Court conditionally grants the corporate defendants' motion to dismiss for *forum non conveniens*.

Because "dismissal under forum non conveniens is appropriate, the [C]ourt need not address other grounds for dismissal." Nibirutech Ltd. v. Jang, 75 F. Supp. 3d 1076, 1079 (N.D. Cal. 2014) (citations omitted). See also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007) ("[A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction

---

[15] Gibaud states that according to the "Federal Court Management Statistics – U.S. District Courts – Combined Civil and Criminal," for the 12-month period ending on June 30, 2025, the average length of time for a civil case to reach trial in the Central District of California for that period was 26.5 months, which is approximately 115 weeks. By contrast, citing to U.K. government statistics, Gibaud estimates that these proceedings, "if brought in the English Court … [and] issued in the King's Bench Division of the High Court, would go to trial in approximately 65-75 weeks." Gibaud Decl. ¶¶ 88-90.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:25-cv-06059-CAS-PDx | Date | May 15, 2026 |
|---|---|---|---|
| Title | Jane Doe v. Jonathan Barnett et al. | | |

over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.").

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the corporate defendants' motion to dismiss for *forum non conveniens*, on the following conditions: 1) each of the corporate defendants, in the English courts, shall waive any challenge to personal jurisdiction and shall waive any statute of limitations defense that matured after plaintiff's filing of this action on July 2, 2025; and 2) Barnett shall waive any challenge to personal jurisdiction and shall waive any statute of limitations defense relevant to this action in the English courts.

The Court **DENIES** the corporate defendants' motion to dismiss under Rules 12(b)(2) and 12(b)(6) as moot.

The Court **DENIES** Barnett's motion to dismiss under Rule 12(b)(2) as moot.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |